UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LAMONT HAWKINS p/k/a "U-GOD"  :  <br>    : <br>     Plaintiff    : <br>    : <br> vs.    : <br>    : <br> WU MUSIC GROUP, LLC.    : <br>    : <br>     Defendant    : <br>    : | CASE NO.:  08 Civ 00159 <br><br> **COMPLAINT** <br><br> **DEMAND FOR JURY TRIAL** |

Lamont Hawkins professionally known as ("p/k/a") "U-God" (hereinafter "Plaintiff") by and through his undersigned attorneys, alleges upon knowledge to himself and upon information and belief as to all other matters, as follows:

## NATURE OF THE CASE

1. This civil action for breach of contract arises out of defendant Wu Music Group, LLC's (hereinafter "Defendant") failure and/or refusal to fulfill its financial payment obligations to Plaintiff as required by the musical recording and live musical performance agreement entered into between Defendant and, among others, Plaintiff (hereinafter the "Contract").

2. The Contract required, in pertinent part, that: (a) Plaintiff perform certain musical recording and live musical performance services to, and/or on behalf of, Defendant; and (b) Defendant make certain financial payments to Plaintiff.

3. Plaintiff fulfilled his obligations under the Contract and, thereafter, demanded that Defendant pay him approximately $170,000.00, representing the financial payments currently due and owing to Plaintiff under the Contract.

4. Defendant breached the terms and conditions of the Contract by refusing and/or failing to make certain financial payments currently due and owing to Plaintiff under the Contract, despite Plaintiff's repeated demands that it do so.

5. As a result of Defendant's breach of the Contract Plaintiff is entitled to relief requested herein.

**JURISDICTION AND VENUE**

6. Plaintiff is a citizen of the state of New Jersey for purposes of diversity jurisdiction under 28 U.S.C. §1332.

7. Upon information and belief, Defendant is a limited liability company organized and existing under the laws of the state of New York for purposes of diversity jurisdiction under 28 U.S.C. §1332.

8. This Court has original subject matter jurisdiction with respect to this action pursuant to 28 U.S.C. §1332 (a)(1) because there exists complete diversity of citizenship between Plaintiff and Defendant; and the amount in controversy exceeds Seventy Five Thousand Dollars ($75,000.00), exclusive of interest and costs.

9. This Court has personal jurisdiction over Defendant because Defendant: (i) is a legal entity organized and existing under the laws of the state of New York; (ii) solicits, transacts and conducts business in the state of New York and in this District and is regularly doing or soliciting business or engaging in a persistent course of conduct in the state of New York and in this District; (iii) receives substantial revenue within the state of New York and in this District; and (iv) committed the acts giving rise to Plaintiff's action in the state of New York.

10. Venue is properly laid in this District pursuant to 28 U.S.C. § 1391(a)(2) because the Contract was executed in the state of New York and a substantial part of the events giving rise to Plaintiff's claim against Defendant, as detailed herein, occurred in the state of New York and in this District.

**PARTIES**

11. Plaintiff is a well known musical recording artist in the "rap" or "hip-hop" music genre. For more than ten (10) years Plaintiff has been, and continues to be, a member of the internationally known musical recording group professionally known as the "Wu-Tang Clan." Plaintiff has recorded musical albums and conducted live musical performances both as an individual artist and as a member of the "Wu-Tang Clan."

12. Upon information and belief, Defendant is a limited liability company duly organized and existing under the laws of the state of New York with its principal place of business located within this District. Upon information and belief, Defendant furnishes, and at all times relevant herein furnished, the musical recording and live performance services of the recording group "Wu-Tang Clan."

**FACTS COMMON TO ALL CLAIMS FOR RELIEF**

13. Upon information and belief, on or about May 2007, Defendant secured a recording contract with the music recording and distribution companies Street Records Corporation and Universal Motown Records Group (collectively "Universal"), in which Defendant would furnish the musical recording services of the "Wu-Tang Clan" for the purpose of recording a new musical album (the "Wu-Tang Clan Album") to be commercially distributed and sold to the general public by Universal (the "Universal Recording Agreement").

14. Upon information and belief, the Universal Recording Agreement required Universal to, *inter alia,* pay Defendant an initial monetary advance, for the musical recording services to be provided by the "Wu Tang Clan," upon Defendant's execution of the Universal Recording Agreement (the "Universal Advance").

15. Upon information and belief, due to the excitement and anticipation of the upcoming "Wu-Tang Clan Album," Defendant was able to secure several additional deals for the "Wu-Tang Clan."

16. Upon information and belief, on or about May 2007, Defendant secured an agreement with the music publishing company BMG Music Publishing, Inc. ("BMG"), under which BMG would have the right to administer the publishing income generated by the exploitation of the "Wu-Tang Clan Album" (the "BMG Agreement").

17. Upon information and belief, the BMG Agreement required BMG to pay Defendant, *inter alia,* a monetary advance: a portion of which had already been paid to Defendant prior to its execution of the BMG Agreement; a portion of which would be paid upon Defendant's execution of the BMG Agreement; and the remainder of which would be paid upon the commercial release of the "Wu Tang Clan Album" in the United States (the "BMG Advance").

18. Upon information and belief, sometime in May 2007, Defendant secured an exclusive master license agreement with a German company Bodog Music GmbH ("Bodog"), under which Bodog would have the exclusive right to commercially exploit the "Wu-Tang Clan Album" in Europe and South Africa (the "Bodog Agreement").

19. Upon information and belief, the Bodog Agreement required Bodog to pay Defendant, *inter alia,* a monetary advance: fifty-percent (50%) of which would be paid to

4

Defendant upon Defendant's execution of the Bodog Agreement; and the remainder of which would be paid to Defendant upon Defendant's delivery of the "Wu Tang Clan Album" to Bodog (the "Bodog Advance").

20. Upon information and belief, sometime between March and May 2007, Defendant entered into an agreement, or agreements, with unknown third-parties under which Defendant would furnish the services of the "Wu Tang Clan" to conduct live musical performances at several musical concerts in Europe (the "European Tour Agreement").

21. Upon information and belief, the European Tour Agreement entitled Defendant to receive, in addition to other income, a certain percentage of the gross ticket sales generated at each music concert in Europe (the "European Tour Income").

22. Upon information and belief, sometime between March and May 2007, Defendant entered into an agreement with a company known as "Rock the Bells, LLC" ("RTB") under which Defendant would furnish the services of the "Wu Tang Clan" to conduct live musical performances at approximately eighteen (18) musical concerts in the United States (the "Rock the Bells Tour Agreement").

23. Upon information and belief, the Rock the Bells Tour Agreement required RTB to pay Defendant, *inter alia,* a sum certain for "Wu Tang Clan's" live musical performances at each of the eighteen (18) concerts in the United States (the "Rock the Bells Tour Income").

24. Upon information and belief, on or about May 2007, Defendant secured a marketing agreement with a company known as "Anthill Trading Ltd., LLC" ("Anthill"), which gave Anthill the exclusive right to market and sell "Wu-Tang Clan" merchandise

5

for a period not to exceed the conclusion of the Rock the Bells Tour and the European Tour (the "Anthill Agreement").

25. Upon information and belief, the Anthill Agreement required Anthill to pay Defendant, in addition to other income, an initial monetary advance: fifty-percent (50%) of which would be paid to Defendant upon Defendant's execution of the Anthill Agreement; and the remainder of which would be paid to Defendant upon the commencement of the European Tour (the "Anthill Advance").

26. It is undisputed that in order to fulfill its obligations under the Universal Recording Agreement, the BMG Agreement, the Bodog Agreement, the European Tour Agreement, the Rock the Bells Tour Agreement and the Anthill Agreement (collectively the "Wu Music Agreements") Defendant needed to secure the publishing rights, the musical recording and live musical performance services of each member of the "Wu Tang Clan," including Plaintiff.

27. On or about May 2007, Defendant began contractual negotiations with each member of "Wu-Tang Clan," including Plaintiff, to secure each member's: (i) agreement to furnish, collectively as the group "Wu-Tang Clan," their individual musical recording and live musical performance services; and (ii) respective publishing rights in and to the musical compositions embodied in the "Wu-Tang Clan Album," to the extent necessary for Defendant to meet its obligations under the Wu Music Agreements.

28. Sometime in May or April 2007, Defendant and each individual member of the "Wu-Tang Clan," including Plaintiff, executed a written agreement (i.e. the Contract). Under the Contract: (i) each member of the "Wu Tang Clan," including Plaintiff, agreed to furnish certain services and provide certain publishing rights to

6

Defendant to the extent necessary for Defendant to meet its furnishing obligations under the Wu-Tang Agreements; and (ii) Defendant agreed to pay each member of "Wu Tang Clan," including Plaintiff, a certain percentage of all the income Defendant received under the Wu Music Agreements including, but not limited to, the monies Defendant received from the Universal Advance, the BMG Advance, the Bodog Advance, the Anthill Advance (sometimes collectively referred to as the "Wu Music Advances"), the European Tour Income and the Rock the Bells Tour Income (sometimes collectively referred to as the "Tour Income").

29. The Contract required Defendant to pay Plaintiff, and each member of the "Wu-Tang Clan," a certain portion of all the income, monies and/or advances payable to Defendant under the Wu Music Agreements as and when Defendant received such income, monies and/or advances.

30. Plaintiff completely fulfilled all of his obligations required under the Contract no later than September or October 2007.

31. Upon information and belief, Defendant received the entire Universal Advance no later than September 2007.

32. Upon information and belief, Defendant received the entire BMG Advance no later than October 2007.

33. Upon information and belief, Defendant received the entire Bodog Advance no later than October 2007.

34. Upon information and belief, Defendant received the entire European Tour Income no later than September 2007.

35. Upon information and belief, Defendant received the entire Rock the Bells Tour Income no later than October 2007.

36. Upon information and belief, Defendant received the entire Anthill Advance no later than August 2007.

37. Upon information and belief, the "Wu-Tang Clan Album" was commercially released on or about December 11, 2007.

38. Defendant breached the Contract by failing and/or refusing to pay Plaintiff approximately Fifty Thousand Dollars ($50,000.00), representing that portion of the Tour Income received by Defendant, currently due and owing to Plaintiff.

39. Defendant breached the Contract by failing and/or refusing to pay Plaintiff approximately Sixty Thousand Dollars ($60,000.00), representing that portion of the BMG Advance received by Defendant, currently due and owing to Plaintiff.

40. Defendant breached the Contract by failing and/or refusing to pay Plaintiff approximately 40,000 Euros (or the United States Dollar equivalent), representing that portion of the Bodog Advance received by Defendant, currently due and owing to Plaintiff.

41. Defendant breached the Contract by failing and/or refusing to pay Plaintiff approximately Six Thousand Dollars ($6,000.00), representing that portion of the "back-end" of the Universal Recording Advance received by Defendant, currently due and owing to Plaintiff.

42. Defendant has failed and/or refused to pay certain monies, described in paragraphs 38 to 41 herein, currently due and owing to Plaintiff, despite Plaintiff's repeated demands that it do so.

## CAUSE OF ACTION

### COUNT I
### BREACH OF CONTRACT

43.     Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 42 as if fully set forth herein.

44.     The Contract is a valid and enforceable agreement.

45.     Defendant materially breached the Contract by refusing and/or failing to pay certain monies, as described in paragraphs 38 to 41 herein, currently due and owing to Plaintiff, despite Plaintiff's repeated demands that it do so.

46.     Defendant's breach of the Contract was willful, intentional and without justification.

47.     As a direct result of Defendant's breach of the Contract, Plaintiff has been damaged in a sum equal to his expectation damages under the Contract and is entitled to recover full payment of the monies, described in paragraphs 38 to 41 herein, currently due and owing to Plaintiff in addition to prejudgment interest at an annual rate of 9%, calculated from the date of Defendant's breach of the Contract.

48.     Plaintiff's exact amount of contractual damages will be determined at trial, but are in no event less than One Hundred Seventy Thousand Dollars ($170,000.00).

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays to the Court for a judgment against the Defendant:

A.      Awarding Plaintiff his contractual damages, together with prejudgment interest at an annual rate of 9% calculated from the date of Defendant's breach of the

Contract, in an amount to be determined at trial, but in no event less than One Hundred Seventy Thousand Dollars ($170,000.00);

     B.    Awarding Plaintiff his reasonable attorneys' fees, costs and expenses related to this action; and

     C.    Awarding such other and further relief as the Court may deem just and proper.

Dated: New York, New York  
       January 8, 2008

Respectfully submitted,

      s/ Paul A. Chin  
Paul A. Chin, Esq. (PC9656)  
LAW OFFICES OF PAUL A. CHIN  
The Woolworth Building  
233 Broadway, 5th Floor  
New York, NY 10279  
(212) 964-8030  
*Attorneys for Plaintiff*

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial pursuant to Rule 38(b) of the Federal Rules of Civil Procedure.

Dated: New York, New York  
       January 8, 2008

Respectfully submitted,

      s/ Paul A. Chin  
Paul A. Chin, Esq. (PC9656)  
LAW OFFICES OF PAUL A. CHIN  
The Woolworth Building  
233 Broadway, 5th Floor  
New York, NY 10279  
(212) 964-8030  
*Attorneys for Plaintiff*